UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> SAFE HAVEN ASSISTED LIVING OF HASLETT, LLC, and TAMESHA PORTER, individually <br><br> Defendants | Civil Action No.: 1:23-cv-00136 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

1. Pursuant to the Fair Labor Standards Act, of 1938, as amended (29 U.S.C. § 201 et seq.) ("FLSA"), Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Secretary"), brings this action to enjoin and restrain the defendants Safe Haven Assisted Living of Haslett, LLC ("Safe Haven") and Tamesha Porter, individually, (collectively, "Defendants") from violating Section 15(a)(3) of the FLSA (29 U.S.C. § 215(a)(3), and to recover front pay, compensatory damages, and punitive damages, in addition to any other legal or equitable relief as may be appropriate to effectuate the purposes of Section 15(a)(3) of the FLSA's anti-retaliation provisions for Defendants' employees.

2. The Secretary, through the Wage and Hour Division, conducted an investigation of Defendants for compliance with the FLSA. The Secretary's investigation reviewed Defendants' employment and pay practices from August 16, 2020, through December 12, 2021 (the "Investigation Period").

## Jurisdiction and Venue

3. This Court has jurisdiction of this case. 29 U.S.C. §§ 216(b), 217 and 28 U.S.C. § 1345.

4. This Court is the proper venue because all or a substantial part of the events or omissions giving rise to these allegations occurred in this judicial district.

## Defendants

5. Defendant Safe Haven is a Michigan limited liability company within this Court's jurisdiction with an office at 5917 Edson Street, Haslett, Michigan 48840, where it conducts business.

6. Safe Haven is a residential assisted living home licensed to care for individuals who are "aged" or have been diagnosed with Alzheimer's Disease.

7. Defendant Tamesha Porter is the sole owner and operator of Safe Haven.

8. At all relevant times, Porter actively managed and supervised Safe Haven's operations and its employees. Among other things, Porter has hired and fired employees, set their work schedules, set their pay rates, and established policies and procedures.

9. Porter has acted directly or indirectly in Safe Haven's interests with respect to its employees and is therefore an "employer" under the FLSA. 29 U.S.C. § 203(d).

10. At all relevant times, Defendants engaged in business in Ingham County, within this Court's jurisdiction.

## The FLSA Applies to Defendants

11. Safe Haven is an "enterprise" under the FLSA due to its related activities performed through unified operation or common control and for a common business purpose. 29 U.S.C. § 203(r).

12. Safe Haven is an "enterprise engaged in commerce" under the FLSA because it had (i) two or more employees who are engaged in or produced goods for commerce; and (ii) an annual gross volume of sales or business done greater than $500,000 during the Investigation Period. 29 U.S.C. § 203(s)(1)(A).

13. Safe Haven is also an "enterprise engaged in commerce" under the FLSA because it "is engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(B).

**FLSA Violations**

14. Defendants repeatedly and willfully violated section 15(a)(3) of the FLSA that prohibits "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3).

15. Defendants took adverse employment actions against employees because of activities protected under the FLSA. Defendants unlawfully retaliated against employees who cooperated, were about to cooperate, or were perceived to be cooperating with the Secretary's investigation into Defendants' pay practices under the FLSA.

16. Porter routinely made threats to and about her employees starting on or about November 17, 2021, when Porter first learned of the Secretary's investigation, until on or about February 7, 2022. During this period, Porter began acting with hostility toward her employees in response to the Secretary's investigation, ignoring employees or refusing to speak to them.

17. Porter threatened to identify and fire employees who complained to the Secretary or cooperated in the Secretary's investigation.

18. Porter used profanity and other aggressive or intimidating language in these threats, including stating that she would "fire all the motherf---ers" involved in the investigation. Porter made these threats both directly to and in the presence of several employees.

19. Porter attempted to trick an employee into revealing that the employee had cooperated with the Secretary, by falsely claiming to the employee that a Wage and Hour investigator told Porter the employee had filed a complaint.

20. Porter's explicit threats of termination and her hostile behavior made employees fear they would suffer reprisal for their perceived or actual cooperation with the Secretary's investigation. This pervasive fear created a hostile environment in which employees felt they could not reasonably continue to work for Defendants.

21. On or about February 7, 2022, a manager, who had worked for Safe Haven for many years, resigned due to Porter's continuing hostile and threatening behavior towards employees.

22. The manager started a new job approximately two-and-a-half weeks after leaving Safe Haven. Her new job paid $1.65 per hour less than her wage at Safe Haven.

23. On or about February 8, 2022, several additional employees resigned due to Porter's hostile and threatening behavior.

24. Shortly after the manager resigned, Porter disparaged the manager to a prospective employer by contacting the prospective employer, unsolicited, and claiming that the manager had engaged in misconduct at Safe Haven.

25. Defendants' retaliatory conduct would dissuade a reasonable worker from engaging in protected activity under the FLSA, including speaking with the Wage and Hour Division during the course of an investigation.

## COUNT ONE
### (Violations of the Anti-Retaliation Provisions of the FLSA, 29 U.S.C. § 215(a)(3))

26. The Secretary incorporates by reference and re-alleges all allegations in this Complaint.

27. Defendants repeatedly and willfully violated Section 15 of the FLSA, 29 U.S.C. § 215(a)(3), by unlawfully retaliating against employees for engaging in protected activity.

28. Defendants took adverse actions against employees because of their actual or perceived filing of complaints or cooperation with the Secretary, and in an attempt to chill participation in the Secretary's investigation. Defendants' actions would dissuade a reasonable worker from engaging in protected activity, including filing complaints with the Secretary or cooperating with an investigation of Defendants' employment and pay practices.

29. Defendants created intolerable working conditions with the intention of forcing employees to quit or with the foreseeable consequence that employees would quit. Employees did quit because of Defendants' adverse actions.

### Prayer for Relief

As a result of Defendants' repeated and willful FLSA violations, the Secretary respectfully requests this Court enter an Order:

A. Permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those in active concert or participation with them, from violating Section 15(a)(3) of the FLSA, pursuant to 29 U.S.C. § 217, including specifically from taking any of the

following actions because an employee or former employee has engaged in, or is about to engage in, protected activity under the FLSA:

    1.    Terminating or threatening to terminate an employee;

    2.    Disparaging or threatening to disparage an employee or former employee;

    3.    Blacklisting an employee or former employee;

    4.    Making an employee's working conditions less favorable, including by reducing or increasing any employee's hours of work or pay; or

    5.    Interfering in any investigation of the Wage and Hour Division.

    B.    Finding Defendants liable for front pay, out-of-pocket costs, compensatory damages, and punitive damages for unlawful retaliation, as well as any other legal or equitable relief as may be appropriate to effectuate the purposes of the FLSA's anti-retaliation provisions. 29 U.S.C. § 215(a)(3); 29 U.S.C. § 216(b).

    C.    Awarding costs and granting such other and further relief as may be necessary and appropriate.

## Jury Demand

The Secretary demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

/

/

/

/

/

/

<div style="margin-left: 50%;">
Respectfully submitted,

**SEEMA NANDA**
Solicitor of Labor
</div>

| | |
|---|---|
| **MARK A. TOTTEN**<br>United States Attorney | **CHRISTINE Z. HERI**<br>Regional Solicitor |
| | s/ Benjamin R. Salk |
| **RYAN COBB**<br>Chief, Civil Division<br>Office of the United States Attorney<br>For the Western District of Michigan<br>330 Ionia Avenue N.W., Suite 501<br>Grand Rapids, Michigan 49503<br>Tel: (616) 456-2404<br>Email: ryan.cobb@usdoj.gov | **BENJAMIN R. SALK**<br>Trial Attorney<br>U.S. Department of Labor<br>Office of the Solicitor<br>230 South Dearborn Street, Rm. 844<br>Chicago, Illinois 60604<br>Tel: (312) 353-2354<br>Email: salk.benjamin.r@dol.gov |
| | *Attorneys for Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor* |